3/10/04

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 FEB 25  AM 9: 33

LORETTA G. WHYTE
CLERK

```
***********************************************
JONATHAN FARRAR                       *      CIVIL ACTION
PLAINTIFF                             *
                                      *      NO: 03-0782
VERSUS                                *
                                      *      SECTION "T"
DIAMOND OFFSHORE MANAGEMENT           *
COMPANY                               *      MAGISTRATE (4)
                                      *
***********************************************
```

### PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S VOCATIONAL REHABILITATION EXPERT TODD S. CAPIELANO

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Jonathan Farrar, who

moves this Court to exclude any testimony by defendant's expert, Todd S. Capielano..

Respectfully Submitted,

BY: _____
LAURENCE E. BEST - #3021
PETER S. KOEPPEL - #1465
**BEST KOEPPEL**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024

1

_____ Fee_____
_____ Process_____
__X__ Dktd_____
_____ CtRmDep_____
_____ Doc. No._____

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that I have on this _____ day of February, 2004, served the

foregoing pleading on all counsel of record herein, by placing a copy of same in the United States

Mail, properly addressed and first class postage prepaid, or by hand delivery.

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

*********************************************

| | | |
|---|---|---|
| **JONATHAN FARRAR** | * | **CIVIL ACTION** |
| **PLAINTIFF** | * | |
| | * | **NO: 03-0782** |
| **VERSUS** | * | |
| | * | **SECTION "T"** |
| **DIAMOND OFFSHORE MANAGEMENT** | * | |
| **COMPANY** | * | **MAGISTRATE (4)** |
| | * | |

*********************************************

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that plaintiff, Jonathan Farrar, will bring on for hearing his

Motion in Limine to Exclude Expert Testimony of Defendant's Vocational Rehabilitation Expert

Todd S. Capielano on the 10th day of March, 2004 at 10:00 o'clock a.m., before Honorable Judge

G. Thomas Porteous, United States District Judge, Eastern District of Louisiana, 500 Camp Street,

New Orleans, Louisiana.

Respectfully Submitted:

**BEST KOEPPEL**

**LAURENCE E. BEST - #3012**
**PETER S. KOEPPEL - #1465**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024

1

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that I have on this 25th day of February, 2004, served the

foregoing pleading on all counsel of record herein, by placing a copy of same in the United States

Mail, properly addressed and first class postage prepaid, or by hand delivery.

2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

```
*********************************************
```

| | |
|---|---|
| **JONATHAN FARRAR** | * **CIVIL ACTION** |
| **PLAINTIFF** | * |
| | * **NO: 03-0782** |
| **VERSUS** | * |
| | * **SECTION "T"** |
| **DIAMOND OFFSHORE MANAGEMENT** | * |
| **COMPANY** | * **MAGISTRATE (4)** |
| | * |

```
*********************************************
```

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S VOCATIONAL REHABILITATION EXPERT TODD S. CAPIELANO

Plaintiff, Jonathan Farrar, respectfully requests that the testimony of Todd Capielano be excluded pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals. Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993). Capielano has been retained to testify as a vocational rehabilitation expert on behalf of defendant Diamond Offshore Management Company.

### BACKGROUND

Todd Capielano has prepared a report in which he concludes that Mr. Farrar's future earning potential is up to $30,000.00 per year "with retraining, depending on the specific field." (Exhibit 1, Vocational Rehabilitation Evaluation, p. 10) Plaintiff seeks to exclude Capielano's testimony because it is speculative and does not rest upon a reliable foundation.

### LAW AND ARGUMENT

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct.2786, 125 L.Ed.2d 469 (1993), the Supreme Court explained that Federal Rule of Evidence 702 assigns to the district court a gatekeeping role to ensure that expert testimony is both reliable and relevant. *Daubert,* 509

1

U.S. at 597, 113 S.Ct. At 2799. A trial court, in its gatekeeping function, must employ a two-part analysis. This Court must first determine whether the proffered testimony is reliable, which requires an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. Second, the court must determine whether the proffered testimony is relevant to a fact in issue in this case. See *Black v. Food Lion, Inc.,* 171 F.3d 308 (5th Cir. 1999).

Rule 702 was amended after *Daubert* to require that testimony by based on sufficient facts or data, that it be the product of reliable principles and methods and that the witness has applied the principles and methods reliably to the facts of the case.

The party seeking to have the district court admit expert testimony has the burden of demonstrating that "the expert's findings and conclusions are based on the scientific method, and therefore, are reliable." *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir. 1998); *Lassiegne v. Taco Bell Corp.* 202 F. Supp. 2d 512, 515 (E.D. La. 2002); *Plourde v. Gladstone,* 190 F. Supp. 2d 708 (D. Vt. 2002). To be reliable, the subject of the testimony must be "scientific...knowledge." 509 U.S. at 590, 113 S. Ct. at 2795. This requirement means that the testimony or proffered opinion must be "grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief." *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 668-669 (5th Cir. 1999). The goal is to "exclude expert testimony based merely on subjective belief or unsupported speculation" and "make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Lassiegne,* 202 F.Supp. 2d at 515.

Admissibility of expert testimony is further governed by Federal Rule of Evidence 703, which provides:

2

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in the forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

See *Elcock v. Kmart Corporation,* 233 F.3d 734, 756 (3rd Cir. 2000) ("an expert should not depend on fictional or random data when rendering an opinion about the quantum of economic harm in a particular case.")

As the court noted in *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2nd Cir. 1996); "Where lost future earnings are at issue, an expert's testimony should be excluded as speculative, if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Citing Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 98 (3rd Cir. 1983). In *Elcock v. Kmart Corporation,* 233 F.3d at 756, the court discussed the role of Federal Rule of Evidence 403 in permitting expert testimony. Rule 403 allows the trial court to exclude relevant evidence if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The court stated with respect to an economist's testimony assessing future economic loss:

> Given the realities of litigation, the opinion of a witness impressed by the court with the label of 'expert' may carry a great deal of weight with a lay jury, particularly in matters as complex as lost future earnings assessments. Permitting such a witness to offer an opinion unsupported by a sufficient factual foundation would significantly increase the risk of misleading the jury and confusing the issues, the very dangers against which Rule 403 defends.

3

Farrar respectfully submits that Capielano's conclusion that Farrar may earn upwards of $30,000.00 per year is flawed because it is speculative, lacks proper factual foundation and is therefore inadmissible under *Daubert* and the Federal Rules of Evidence. The proffered testimony will not assist the trier of fact in understanding the evidence or determining any fact in issue. The proffered testimony is unreliable and fails the balancing test of Federal Rule of Evidence 403. Capielano's opinion lacks the requisite factual foundation.

Capielano's opinion does not present an accurate and complete appraisal of Farrar's capabilities and his impairment. It should be excluded as speculative because it is based on unrealistic assumptions concerning Farrar's future employment prospects. Capielano does not take into account that Farrar will require additional surgery and is therefore still unemployable at this time. (Exhibit 2, December 1, 2003 Report of Dr. Molleston)

Capielano does not utilize any methodology or science in arriving at his conclusions. For example, he does not address United States Department of Labor Guidelines for Employment. He essentially makes a quantum leap from the fact Farrar had a couple of years experience as a tile installer to the assumption Farrar is therefore qualified to work as a tile salesperson/estimator. In doing so, Capielano does not address guidelines to show that Farrar's limited experience as an installer qualifies him to be a salesman. Moreover, there is nothing in Capielano's report to suggest Farrar is capable of performing sales work. Indeed, results of the Career Occupational Preference System (COPS) test show Farrar's highest scores were in the areas of skilled and professional technology and professional science, all of which indicate skills contrary to those necessary to be a salesman.

4

The testimony of Capielano should be excluded because his opinion lacks the requisite factual foundation rendering his conclusions unreliable under *Daubert*. "An expert's opinion is only as good as the facts upon which it is based. An opinion based upon incorrect or incomplete facts should be excluded because "it will not advance the express goal of assisting the trier of fact." *Christophersen v. Allied-Signal Corp.,* 939 F.2d 1006, 1114-1115 (5th Cir. 1991). The facts a proffered expert relies upon must be the same type of facts as other experts in the same field reasonably rely upon in forming their opinions. Here, Capielano's conclusions ignore the fact that additional surgery of the lumbar spine at L4-L5 is medically probable and that there is nothing in Farrar's employment history or the tests administered which indicate he is capable of working as a sales person/estimator. The information available to Capielano from the COPS test contains nothing to suggest Farrar is capable of working as a salesperson. Moreover, Capielano's report does not contain any methodology or stated science to suggest the conclusions reached.

## CONCLUSION

In sum, Capielano does not provide an adequate foundation or reliable explanation for concluding that Farrar has post accident earning potential of $30,000.00. Capielano's rank speculation and failure to use any methodology or stated science renders his testimony inadmissible under the Federal Rules of Evidence and *Daubert*. For the foregoing reasons, plaintiff respectfully requests that the testimony and report of Capielano be excluded.

5

Respectfully Submitted,

BY: _____
LAURENCE E. BEST - #3021
PETER S. KOEPPEL - #1465
**BEST KOEPPEL**
2030 St. Charles Avenue
New Orleans, Louisiana  70130
Telephone:  (504) 598-1000
Facsimile:   (504) 524-1024

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that I have on this ___25th___ day of February, 2004, served the

foregoing pleading on all counsel of record herein, by placing a copy of same in the United States

Mail, properly addressed and first class postage prepaid, or by hand delivery.

_____

6



## CAPIELANO & ASSOCIATES

### VOCATIONAL REHABILITATION AND COUNSELING

**Todd S. Capielano, LRC, CRC**

January 29, 2004

Mr. Richard A. Chopin
Chopin, Wagar, Cole,
Richard, Reboul & Kutcher, LLP
Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002-8130

RE: Jonathan Farrar
Our File #: 3865

## VOCATIONAL REHABILITATION EVALUATION

I received this referral for the purpose of a vocational rehabilitation evaluation to clarify Mr. Farrar's vocational potential and earning capacity. I conducted the vocational interview on January 21, 2004. He was accompanied by his twin brother. Mr. Farrar was administered vocational testing including the *Woodcock-Johnson Test of Achievement – III,* the *Career Occupational Preference System (COPS),* and the *Slosson Intelligence Test - Revised (SIT).*

I have also reviewed file material provided to include:

1.  Mr. Farrar's personnel file from Diamond Offshore, Diamond Health and Dental Employees Benefits Booklet and training records;

2.  MRI reports of October 27, 2000 and September 30, 2002;

3.  Hospital chart notes of Forest General Hospital;

4.  Prescription records from Anderson Drugs, Owl Drug Store, and John's Discount Drugs;

5.  Medical notes of David Bomboy, M. D., dated October 15, 2002 through December 12, 2003;

6.  W-2 forms including Mr. Farrar's earnings from 2000, 2001, and 2002;

7.  Accident report dated September 7, 2002;

4728 Jefferson Highway, • Jefferson, Louisiana 70121
504-734-3703 • 504-734-3707 fax
toddcapielano@bellsouth.net

EXHIBIT

tabbies'

1

Page -2-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

      8.     Vocational Evaluation of Cornelius Gorman, PhD, dated June 4, 2003;

      9.     Medical notes of Dr. Molleston, dated November 2002 through December 1, 2003;

     10.    Pain Clinic evaluation report of David McKeller, dated January 16, 2003;

     11.    Affidavit of Medical Bills and Records, Hattiesburg Clinic;

     12.    Deposition of Jonathan Farrar, dated August 28, 2003;

     13.    Medical records from Occupational Medicine Center of West Jefferson.

## BACKGROUND INFORMATION:

Mr. Jonathan Farrar is thirty-two (32) years of age, born on April 29, 1971. He was born in Lafayette, Louisiana and raised in Purvis, Mississippi. He currently lives at 704 First Avenue, Purvis, Mississippi 39475. He resides with his wife and two (2) children, ages two and three (2 and 3). His spouse is currently in school, full-time, at Southern Mississippi. She has two (2) semesters remaining in her major, Elementary Education.

Mr. Farrar has two (2) brothers and one (1) sister. He is a twin, and his brother reportedly has some birth defects. His parents are reportedly in good health. When asked about family medical problems, he reported diabetes and high blood pressure runs on his father's side of the family.

Financially, Mr. Farrar receives maintenance benefits of $350.00 every two (2) weeks. He reported he also receives approximately $1,000.00 per month from his attorney.

## EDUCATION:

Mr. Farrar completed the eleventh grade in approximately 1989 from Johnson Central High School. He attended part of the twelfth grade, through December of that year. He obtained his high school diploma via Newport Pacific High School, taking correspondence courses.

Mr. Farrar also took welding courses at Lamar County VoTech School in Purvis, Mississippi for approximately one-and-a-half (1½) years, but did not complete his course work. Mr. Farrar underwent company sponsored training via Diamond Offshore to include Respirator Issuance and Training, Job Safety

Page -3-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

Analysis Training, Diamond Offshore Roustabout Orientation and Training, Sea Survival, Helicopter Safety, and Egress Course, Floor Hands Well-Control Course for Drilling Operation, and Well-Completion/ Well-Work Over Operations, Rigger Training as well as U. S. Coast Guard Marine Firefighting Basic and Advance Training via Delgado Community College. All additional training was learned on the job, provided by employers throughout his work history.

Mr. Farrar denies any military history. He reported an arrest in approximately 1995 or 1996 for driving on a suspended license.


**INTERESTS/ACTIVITIES:**

Prior to his injury, Mr. Farrar enjoyed playing the guitar, fishing, and hunting. Since his injury, he reported he has to alternate sitting and standing while playing his guitar. He occasionally attends church. His typical activities of daily living include waking up between 8:00 and 10:00 a.m. (depending on how he slept), watching television, occasionally cooking, taking his children to daycare, folding clothes, and laying down periodically throughout the day. He retires for the night around midnight or 1:00 a.m.


**WORK HISTORY:**

Mr. Farrar could not recall the exact dates of his early employment, but reported first working odd jobs on and off from high school to approximately the age of twenty-five (25). He worked as a construction laborer in the residential setting when work was available. Additionally, he worked as a tile layer with a friend. He also played guitar on weekends at local lounges.

In approximately 1996, he obtained employment with Pioneer Quality Sales and Installation as a satellite installer and working supervisor. He reported this company went bankrupt in approximately 1997. He then obtained employment with Accent Stone and Tile as a tile installer. He worked in this capacity for approximately one (1) year until obtaining employment with Anderson's Paint and Decorating as a tile installer/subcontractor. He worked as an independent tile layer until approximately February 2000.

He then obtained employment with Addison Construction as a form carpenter/helper and welder. He worked in this capacity for approximately six (6) months until beginning his own company, Farrar Tile, as a self-employed tile installer. He then began working for Key Energy as a rig hand for several months. Mr. Farrar obtained employment with Diamond Offshore, working as a roughneck. He worked in this capacity until March 2001 when he then became a floor hand. He worked in this capacity until his work-related injury of September 5, 2002. Thereafter, he was put on a light duty status by the safety

Page -4-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

representative at Diamond Offshore and worked until approximately September 12, 2002. Mr. Farrar has reportedly not worked since that time.

## EARNINGS RECORDS:

The following are earnings of Mr. Farrar from 2000 through 2002.

| YEAR | GROSS EARNINGS |
|------|----------------|
| 2000 | $3,303.95 |
| 2001 | 37,204.58 |
| 2002 | 25,863.34* |

Information provided from W-2 forms.

## MEDICAL SUMMARY:

Since the material reviewed documents his course of medical treatment, I will attempt only to summarize his status as it relates to his vocational rehabilitation potential/employability.

Mr. Farrar reportedly injured his low back while employed by Diamond Offshore on September 5, 2002. At the time of his injury, he had been working for this company for approximately two (2) years. Initially after his injury, he was placed on a light duty status by the safety representative at Diamond Offshore.

He did not see a physician until several days later at Work Well in New Orleans. At that time, he also had an MRI conducted. An MRI was performed two (2) years prior as a pre-employment requirement.

Mr. Farrar was then seen by Dr. David Bomboy on October 15, 2002. Dr. Bomboy started a physical therapy program and placed him on an anti-inflammatory agent, and a muscle relaxer, as well as Tylenol 3 for pain. He was placed on a no work status, and told to return to the office two (2) weeks.

---

* Year of injury.

Page -5-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar


In November 2002, Mr. Farrar was seen for a neurosurgical consultation and evaluated by Dr. Molleston who opined that he had significant disk disease at two (2) levels, both L4-5 and L5-S1. Mr. Farrar underwent a diskogram and subsequent surgery on March 25, 2003.

The medical records indicate he was last seen by Dr. Bomboy postoperatively on April 7, 2003, when Dr. Bomboy felt he was progressing satisfactorily in his postoperative recovery and it would take several months before he would reach full recovery.

As of December 1, 2003, Dr. Molleston's report indicated Mr. Farrar has permanent restrictions of no bending at the waist; no picking up from the floor to waist; and no lifting over thirty (30) pounds. He also indicated Mr. Farrar is to perform no regular or repetitive lifting over twenty (20) pounds and has a permanent partial impairment to the whole body of eighteen percent (18%). Dr. Molleston stated, "Mr. Farrar will never be able to return to any manual labor and specifically cannot return to work in the offshore field". Dr. Molleston also indicated that Mr. Farrar experiences a lot of depression and has been prescribed Lexapro. Regarding his future medical care, he projected treatment for back pain including physical therapy, occasional imaging, and medications. He also reported that additional surgery at L4-L5 level is medically probable within the next five (5) years. He would also incur additional expenses for treatment of depression and referral to comprehensive pain management.

Mr. Farrar was last seen by Dr. Molleston on January 14, 2004 and is to return in two (2) weeks from that date for a refill of his medications.

Currently, Mr. Farrar is taking Xanax twice daily, Lortab 10 three (3) times daily, and Soma three (3) times daily as prescribed by Dr. Molleston. He was recently taken off of Lexapro and was advised by Dr. Molleston to begin taking Wellbutrin on his next visit.

Mr. Farrar is five feet four inches (5' 4") tall, weighing approximately one hundred ninety to one hundred ninety-five (190 to 195) pounds. He reported he has gained twenty to twenty-five (20 to 25) pounds since his injury. Mr. Farrar uses a back brace occasionally for support.

His reported physical limitations include being able to stand for approximately thirty to forty-five (30 to 45) minutes at a time, limited walking and sitting for one to one-and-a-half (1 to 1½) hours at a time. He indicated his pain is progressively getting worse. He occasionally experiences headaches, which he reported experiencing at the time of this evaluation.

Page -6-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar


## VOCATIONAL ANALYSIS:

Mr. Farrar's career has been as a "hands-on" worker. The last few years of his work history included work in the offshore industry.

The following are most closely related to the jobs he has held.

| JOB TITLE | PHYSICAL DEMANDS | SKILL LEVEL |
|---|---|---|
| Tack Welder | Heavy | Skilled |
| Roughneck | Heavy | Semi-skilled |
| Tile Layer | Medium | Skilled |
| Satellite Installer | Medium | Skilled |
| Construction Worker | Heavy | Semi-skilled |
| Floor Worker, Oil Well | Heavy | Semi-skilled |

He has acquired skills and work related abilities including:

- Knowledge of tools, machines, materials, and methods used in construction, tile laying, and offshore work;

- Using shop math to calculate object dimensions, material amounts needed, and material costs;

- Coordinating eyes, hands, and fingers to use hand tools or machines in constructing, making, or repairing objects:

- Adhering to object specifications or standards;

- Overseeing work of others.


## VOCATIONAL TESTING:

Mr. Farrar was administered the *Woodcock-Johnson Test of Achievement – III* in order to obtain a better picture of his academic functioning levels. He was also given the *Slosson Intelligence Test - Revised (SIT)*, as well as the *Career Occupational Preference System (COPS)*, a self-administered Interest Inventory.

Page -7-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

On the Woodcock Johnson, he received the following profile:

| SUBTEST | STANDARD SCORE | PERCENTILE RANK |
|---|---|---|
| Letter-Word Identification | 100 | 50th |
| Passage Comprehension | 100 | 49th |
| Calculation | 99 | 47th |
| Applied Problems | 91 | 26th |

Letter Work Identification was the first subtest given in this battery of tests. Mr. Farrar scored in the 50th percentile. He scored at the college grade equivalent and was able to correctly pronounce seventy (70) words out of seventy-six (76).

Passage Comprehension was the second subtest given in this battery of tests and Mr. Farrar also ranked at the college level, at approximately the 13.0 grade equivalency. This section of the test involves understanding words and how they fit into a sentence or paragraph format.

The mathematics portion of this test includes two (2) subtests, Calculation, and Applied Problems. On both tests, Mr. Farrar scored between the eighth and ninth grade levels. He was able to correctly perform basic mathematic calculations including addition, subtraction, multiplication, and division. He had difficulty with fractions and algebraic formulas.

On the Applied Problems, or word problems section, Mr. Farrar was able to complete problems related to currency, mileage, and amounts needed. He did answer quickly throughout this section and was reminded to use his paper and pencil as needed. During this part of the test, he reported he was experiencing a headache.

The *Slosson Intelligence Test - Revised (SIT)* was the second instrument given to Mr. Farrar. On this test, he received a raw score of one hundred thirty-nine (139) and a standard score of one hundred seven (107). This indicates that Mr. Farrar ranked within the average range of intellectual functioning.

The last test given to Mr. Farrar was the COPS, an Interest Inventory. This inventory is self-administered and scores are broken down into fourteen (14) career occupational preference categories. Of the fourteen (14) categories, Mr. Farrar scored at or above the 65th percentile in the areas of **Skilled Technology, Professional Technology,** and **Professional Science.**

Page -8-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

His highest score was in the area of Skilled Technology ranking at approximately the 78th percentile.

Skilled Technology occupations involve working with ones hands in a skilled trade concerned with construction, manufacturing, installation, or repair of products and related fields of construction, electronics, and mechanics. Sample occupations in this category may include construction labor worker, painter, machinist, and electronics assembler/repairer, to name a few. High levels of interest in this area may also be reflective of his past work history.

Professional Technology occupations involve responsibility for engineering and structural design and the manufacture, construction, or transportation of products or utilities. Sample occupations within the areas include electrical engineer, computer systems engineer, applications programmer, mechanical engineer, design engineer, structural drafter, and tool programmer, to name a few.

Professional Science occupations involve responsibility for the planning and conducting of research. They also include collecting and applying systematic accumulation of knowledge in branches of mathematical, medical, life, and physical sciences. Sample occupations include surgeons, computer programmers, and physical science specialists.

**IMPRESSIONS:**

There are several scenarios that can be considered when identifying job alternatives suitable for Mr. Farrar. The most recent report from Mr. Farrar's treating physician, Dr. Molleston, indicates that he will have permanent restrictions that appear within the light range of physical demands. Since the jobs he performed in his past are all within the medium to heavy physical demand level, he will not be able to return to these types of jobs. Nevertheless, he will have access to jobs that are within the light physical demand level and less as well as jobs within his overall vocational profile.

First of all, considering his age, education, work experience, vocational testing results, as well as transferable skills and considering the restrictions by Dr. Molleston, he may be suitable for jobs in his geographical area including production worker/assembler, service advisor, dispatcher to name a few. Production or bench assembly work involves utilizing the hands and are usually learned via on-the-job training. This is how Mr. Farrar has learned most of the jobs in his past work. He may also be suitable for employment as a service advisor and dispatcher.

Page -9-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

Considering transferable skills from the flooring and tile industry, Mr. Farrar may be suitable for jobs such as estimator/sales. This would allow him to utilize his experience working as a tile installer as well as his experience owning his company.

We have performed preliminary labor market research of employers in or around the Hattiesburg area, which is the nearest and largest labor market area to Mr. Farrar.

**1. Service Writer**
This automobile dealership located in Purvis, Mississippi is currently taking applications for the above position for potential hire. This position involves receiving phone calls and in person contact with customers and writing service tickets of automotive repairs. Will greet customers and write up tickets and provide these to the mechanics. Will perform initial inspection of the vehicle to determine the customer's complaints. This is considered light level employment with on-the-job training provided. Starting earnings are between $8.00 to $9.00 per hour, depending on experience.

**2. Service Writer**
Another automobile dealership in Hattiesburg is also accepting applications anticipating an opening for the above position. This company also offers on-the-job training with starting earnings at approximately $8.00 per hour.

**3. Sales Person/Estimator**
This flooring/appliance company is hiring for the above position located in Hattiesburg. The job involves calling on customers via telephone and in person and driving to customer's sites to measure square footage and compute costs for the installation of flooring. The employer is looking for someone with a background such as Mr. Farrar's for consideration. This is considered light level employment with alternating sitting, standing, and walking. Maximum lifting is up to twenty (20) pounds. This is a commission based job, based on the sales generated. According to the employer, earnings are up to $30,000.00 per year, depending on the aggressiveness of the sales person/estimator.

Earnings, post injury, for jobs listed above with direct placement or on-the-job training are up to the $16,000.00 to $19,000.00 per year range. The higher end, in estimating/sales, is up to $30,000.00 per year.

Another scenario is the possibility of retraining. Mr. Farrar expressed an interest in some type of additional schooling or technical training. Although he was not specific as to the exact training he is interested in pursuing, he did express some interest in the music industry, as this has been an avocational interest of Mr. Farrar's. He indicated the possibility of training as a sound technician. Sound engineers and technicians install, test, repair, and set up, as well as operate electronic equipment used to record and transmit radio and television programs[1]. Training for this field is usually via technical school, community

---

[1] Occupational Wage Survey, U. S. Publishing 2003: State of Mississippi median earnings.

Page -10-
Mr. Richard A. Chopin
January 29, 2004
Our File #: 3865 – Jonathan Farrar

college, which is in the area of Broadcast Technology or Electronics Technology. If training is required by employers in this field, Pearl River Community College in Hattiesburg, Mississippi offers an electronics technology curriculum. Further research may be necessary concerning the enrollment requirements, job outlook, and earning potential for this field. With training in electronics technology, earnings for electronic repairers in the state of Mississippi are $11.22 per hour[2]. Other types of retraining may be suitable for Mr. Farrar, but would best be determined should he receive more specific vocational counseling. These types of services may be available to him through the Mississippi Division of Vocational Rehabilitation. He was directed to apply for such services.

Mr. Farrar has demonstrated pre-injury earnings of approximately $37,205.00 annually. Within the confines of his vocational profile and restrictions outlined by Dr. Molleston, his post-injury earning capacity is up to approximately $30,000.00 annually, with direct placement or on-the-job training. Starting earnings may be in the $8.00 to $9.00 per hour range. With retraining, depending on the specific field, earnings are comparable to $30,000.00 per year.

Mr. Farrar may benefit from vocational rehabilitation counseling, which may assist in helping him fine-tune a vocational plan with either direct job placement or retraining. He may receive the above services, if eligible, from the Division of Vocational Rehabilitation in Mississippi. He can also receive vocational counseling through private vocational counselors or through this office if authorized. It should also be considered that if Mr. Farrar is in need of any additional surgery as suggested by Dr. Molleston, this may affect his employability until such time he is recovered from such surgical intervention. Additionally, any future treatment offered and provided concerning depression or pain management as indicated by Dr. Molleston may help increase his return to work potential.

If I can provide you with any additional information please feel free to contact me at any time.

Sincerely,

TODD S. CAPIELANO, LRC, CRC
Vocational Rehabilitation Counselor

TSC/cgm

Enclosure

---

[2] Occupational Wage Survey, U. S. Publishing 2003. State of Mississippi median earnings.

## Michael C. Molleston, M.D., P.A.

MICHAEL C. MOLLESTON, M.D.

6701 Highway 49, Suite 205
Hattiesburg, Mississippi 39401
Phone (601) 288-1565   Fax (601) 288-1560

*Mailing Address:*
P.O. Box 15159
Hattiesburg, MS 39404-5159

December 1, 2003

Best Koeppel
Professional Law Corporation
2020 St. Charles Ave.
New Orleans, LA 70130

RE: JONATHAN C. FARRAR
DOB: 4-29-71

Dear Mr. Best:

I am writing to you in regards to your letter for requesting a medical narrative on Jonathan C. Farrar on 10-2-03.

Mr. Farrar is a 32-year-old man who I initially evaluated in November of 2002. He had been injured in September of 2002 after an injury after working offshore. He was pulling on some sort of riser and during this felt numbness, tingling, and then severe pain in his back. He was treated on the rig for " a pulled muscle" and then eventually referred for physical therapy. This made his situation more severe.

He underwent an MRI scan of his lumbosacral spine in September of 2002 and this demonstrated a ruptured disk at L5-S1 with changes consistent with disk injury at L4-5 as well.

We repeated the MRI scan in December of 2002 and again this demonstrated the acute disk rupture at L5-S1 and what was interpreted as an asymmetric disk bulge to the right at L4-5.

Mr. Farrar underwent a diskogram in January of 2003 and this demonstrated concordant pain at L5-S1 with internal disk disruption. The L4-5 injection was interpreted as "negative" with low disk compliance and internal disk disruption but no concordant pain.

Mr. Farrar had an abnormal neurologic exam. He had positive straight leg raising sign. He had lumbar spasms on palpation of the paraspinous musculature. His lumbar range of motion was impaired by over 50%.

He underwent lumbar laminectomy at L5-S1 with interbody fusion and posterior lateral fusion with rods and screws on 2-25-03.

EXHIBIT
tabbies
2

12/16/03
Dec 16 03 02:05p

Case 001-cv-00702-GTP    Document 50    Filed 02/25/04    Page 22 of 22
JOHN W. LEE JR PA

ạ003
p.2

PAGE 2
12-1-03
RE: JONATHAN FARRAR

At the time of the surgery acute disk rupture at L5-S1 was visualized and there was a large hole in the annular ligament at L5-S1 on the right.

Postoperatively he has recovered without complications. He has persistent back pain and takes narcotics on a regular basis. He has had a lot of depression as a result of his injury and the impairment and pains as well. He is on Lexapro for this.

His neurologic exam continues to be abnormal. He has positive straight leg raising signs, paraspinous spasms on palpation, the lumbar spine, and his symptoms are worsened with bending at the waist, standing for any length of time, or sitting without a frequent change in his position.

With medical probability Mr. Jonathan Farrar sustained a substantial injury to his lumbar spine as a result of his work-related accident in September of 2002. At this point he has permanent restrictions of no bending at the waist, no picking up from floor to waist, no lifting over 30 pounds, and regularly no lifting over 20 pounds. He has a permanent partial impairment to the body as a whole of 18% on the basis of his lumbar disk injury at L4-5 and L5-S1. This is according to the 5th edition of the American Medical Association Guidelines for permanent partial impairment rating. Mr. Farrar will never be able to return to any manual labor and specifically cannot return to work in the offshore oilfield.

With regards to future medical care I would allow $2,000.00 per year for the foreseeable future for treatment of back pain including physical therapy, occasional imaging, and medications. Additional surgery at the L4-5 level is medically probable within the next five years and I would allow approximately $25,000.00 for surgeon's fees, and $35,000.00 for hospital fees. He will incur additional expenses for treatment of depression, and a referral to a comprehensive pain management clinic is certainly appropriate for a patient like Mr. Farrar.

I hope you have found this letter helpful with regards to the medical situation of the patient. If I can be of any further service, please do not hesitate to contact me.

Sincerely,



Michael C. Molleston, M.D.
MCM/sm